**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SORAYA BARKER, individually and on behalf of similarly situated persons,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE NO.:** |
| | _____ |
| **vs.** | |
| **WBY, INC., D/B/A FOLLIES, STEVEN YOUNGELSON and SURREY WHITE,** | **FLSA COLLECTIVE ACTION** |
| **Defendants.** | **JURY DEMAND** |

## <u>COMPLAINT</u>

COMES NOW Plaintiff SORAYA BARKER, individually and on behalf of similarly situated entertainers and waitresses, and by and through her attorneys, files her Complaint for violation of the minimum wage, overtime and tip provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., as amended by the Tip Credit Protection Act of 2018, 29 U.S.C. § 203 (hereafter "FLSA") against Defendants WBY, INC., D/B/A FOLLIES, STEVEN YOUNGELSON and SURREY WHITE and shows:

## INTRODUCTION

1.      Plaintiff SORAYA BARKER and the collective action members are current or former entertainers and waitresses of Defendants who were misclassified as independent contractors by Defendants and deprived of their rights to be paid the minimum and overtime wages and retain their earned tips under the FLSA. They seek recovery of their lost minimum and overtime wages and tips, an equal amount in liquidated damages and reasonable attorneys' fees and costs incurred as a result of Defendants' unlawful activities.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA.

3.      Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiff and the collective action members worked in this District.

## PARTIES

4.      Plaintiff SORAYA BARKER a/k/a "Stephanie" ("Barker") is an employee of Defendants. Defendants have employed Barker since 2011. Barker was employed as an entertainer and waitress during the past three (3) years.

5.     The collective action members are current or former entertainers and waitresses who were employed by Defendants during the past three (3) years.

6.     Defendant WBY, Inc. ("Follies") is a corporation organized and existing under the laws of the State of Georgia. FOLLIES may be served by serving its registered agent located in Atlanta, Georgia. At all times mentioned herein, FOLLIES was an employer of each Plaintiff and collective action member within the meaning of 29 U.S.C. § 203(d).

7.     Defendant STEVEN YOUNGELSON ("Youngleson") is the owner and an employee, officer and director of FOLLIES. Youngelson acted directly or indirectly on behalf of FOLLIES with respect to Plaintiffs and collective action members' compensation and other terms and conditions of their employment, and, at all times mentioned herein was an "employer" or joint employer of Plaintiff and the collective action members within the meaning of the FLSA. DefendantYoungelson may be served at 3376 Peachtree Road NW #37A, Atlanta, GA, or wherever he may be found.

7a.     Defendant SURREY WHITE ("White") is the owner and an employee, officer and director of FOLLIES. White acted directly or indirectly on behalf of FOLLIES with respect to Plaintiffs and collective action members' compensation and other terms and conditions of their employment, and, at all times mentioned

herein was an "employer" or joint employer of Plaintiff and the collective action members within the meaning of the FLSA. Defendant White may be served at 3813 Carter Valley Drive, Marietta, GA, or wherever he may be found.

## COMMON FACTUAL ALLEGATIONS

8.      During the three years prior to the filing of this complaint (hereinafter "the relevant time period") Defendants owned and operated the FOLLIES, an Atlanta, Georgia, nightclub featuring nude female dancers (hereinafter "the Club").

9.      Plaintiff and the collective action members are current and former adult entertainers and waitresses employed by Defendants at the Club during the relevant time period.

### A.      **Entertainer Claims.**

10.      The Club hires entertainers to dance partially or fully nude for Follies' customers.

11.      Follies' entertainers dance on stage or tableside or in private VIP rooms.

12.      The entertainers are not paid wages by Follies.

13.      Instead, the entertainers are compensated entirely by Follies' customers in the form of tips.

14.     Follies classifies its entertainers as independent contractors rather than employees.

15.     Follies classifies its entertainers as independent contractors to avoid the costs associated with complying with the minimum and overtime laws, state and federal employment taxes, the workers' compensation laws, employment health insurance and other state and federal laws applicable to employment.

16.     At all times during the relevant time period, Youngelson and White were owners, officers, and directors of Follies and involved in the day-to-day operation of the Club.

17.     During the relevant time period, Youngelson and White made significant decisions affecting the employment and compensation of Plaintiff and the collective action members, including but not limited to the decision to (i) misclassify Plaintiff and other dancers as independent contractors rather than employees; (ii) not pay them the minimum wage required by the FLSA; (iii) not pay them the overtime wage required by the FLSA; and (iv) seize their tips in violation of TIPA and the FLSA.

18.     Upon information and belief, Youngelson and White were the only persons affiliated with FOLLIES and the other clubs vested with the authority to

classify entertainers as employees and change their compensation structure to comply with the FLSA.

19.     At all times during the relevant time period, the Club was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA.

20.     At all times during the relevant time period, the Club was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia, and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

21.     During 2015, 2016, 2017 and 2018, the Follies had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

22.     At all times during the relevant time period, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person," as defined in the FLSA.

### D.    **Degree of Control**.

27.    The Club exercised a significant degree of control over the work of entertainers at the Club.

28.    At all times during the Relevant Time Period, the Club maintained and enforced rules of conduct for dancers.

29.    FOLLIES's house mom's go over the rules and Club's expectations with each entertainer when she is hired.

30.    The duties of Club management included ensuring that dancers complied with Club rules and policies.

31.    The Club required each entertainer to perform all work on its premises.

32.    The Club provided the customers, building, sound systems, stages, VIP rooms, music, lighting, support staff, alcohol, food, and other facilities and personnel necessary for an entertainer to dance for a living.

33.    The Club provided the location, building and facilities for each entertainer to work and earn her living.

34.    Each entertainer was forbidden to leave with a customer, take a customer home or date a customer.

35.    At work, each entertainer was managed and supervised by the Club's managers, house moms and floormen.

36.     Each entertainer worked a day, midday or night shift at Follies.

37.     Entertainers are expected to arrive on time for a scheduled shift or pay a fine in the form of an increased house fee to work that shift.

38.     If an entertainer arrives after a certain time, she is forbidden to work at all that shift.

39.     During a shift, an entertainer may not leave the premises without permission of management or a house mom.

40.     Entertainers are required to dance stage sets when called to the stage by Follies' disc jockey ("DJ").

41.     Follies' entertainers are required to stay on stage until their replacement arrives.

42.     If a replacement does not arrive the entertainers must remain on stage and dance until an entertainer does arrive to replace her.

43.     Follies has and enforces rules about how an entertainer may dance while on stage, the floor and VIP rooms.

44.     Follies determined what an entertainer may charge for table and VIP dancing.

45.     Follies does not permit its entertainers to walk around the club "partially of fully naked."

46.    The Club's house moms and managers evaluate the appearance and dress of dancers at the Club.

47.    The Club enforces dress and appearance requirements consistent with the image they wish to maintain for their entertainers.

48.    Each entertainer is expected to wear a costume to work complying with Follies' standards.

49.    The Club's house moms and managers have the authority to require dancers to change their appearance and attire at work.

50.    On occasion during the relevant time period, the Club's house moms and managers required dancers to change their appearance and attire at work.

51.    During the relevant time period, the Club's managers had the authority to suspend and discipline dancers.

52.    During the relevant time period, the Club's managers supervised dancers on a day-today basis.

53.    At times during the relevant time period, the Club required dancers to attend meetings.

54.    At times during the relevant time period, the Club used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, Club promotional efforts and other work related issues.

55.     At times during the relevant time period, the Club's managers and house moms suspended and disciplined entertainers for violation of Follies' rules.

**E.      Relative Investment/Opportunity for Profit and Loss.**

56.     During the relevant time period, the Club paid all costs associated with advertising, marketing, and promoting the Club.

57.     The Club rents or owns the property on which the Club is located.

58.     During the relevant time period, the Club paid all costs associated with running and operating the Club.

59.     At all times mentioned herein, each entertainer was dependent entirely upon the Club's customers to compensate her for working at the Club.

60.     The Club's customers are derived from the Club's advertising and marketing efforts and the Club's reputation from operating the FOLLIES for many years.

61.     The Club required Club customers to pay a "door fee" to enter the business.

62.     The Club had ultimate authority as to which individuals were allowed to enter the Club as customers.

63.     At all times during the relevant time period, the Club's managers and house moms had the discretion not to permit a dancer to work on the premises.

64.     The Club enforced a mandatory check-out process for the Club's dancers, which included the payment of various fees to the Club and its managers, house moms, and DJs.

65.     Follies provided and maintained all stages used for dancer performances at the Club.

66.     The Club provided all poles used for dancer performances at the Club.

67.     The Club provided VIP rooms for entertainers' use with customers.

68.     The Club provided the floor and tables at which its entertainers danced.

69.     The Club provided the sound system, lighting and music used by entertainers to dance at work.

70.     The Club provided food and alcohol for its customers.

71.     At all times during the relevant time period, the Club was responsible for day-to-day purchases of liquor and food for sale at the Club.

72.     The Club makes substantial profits from its operations.

73.     An entertainers' ability to increase her earnings is largely based upon her looks and working harder or longer hours.

**F.    Skill and Experience**.

74.    At all times during the relevant time period, the Club did not require the Club's dancers to have prior experience as dancers or any formal or special training.

75.    At all times during the relevant time period, when an individual wanted to work as a dancer at the Club, a house mom and/or manager generally performed a "body check" to determine if the individual's body was suitable for performing at the Club.

76.    An entertainer is hired by the Club largely because of her "appearance" and willingness to take off her clothes in front of others.

**G.    Duration and Exclusivity.**

77.    Follies entertainers are hired indefinitely.

78.    The indefiniteness of the employment of entertainers is more indicative of an employment relationship, than an independent contractor relationship during which the contractor is hired for a period of time.

79.    At the time of hiring, the Club hopes the entertainer will work for Follies for a significant duration.

80.    Plaintiff Barker worked exclusively for Follies for over seven (7) years.

81.     Many of the collective action members worked for the Follies for a year or longer.

### H.     Follies' Nude Dancers Are Integral to Its Operations.

82.     At times during the Relevant Time Period, the Club advertised its business using pictures of scantily clad women.

83.     The Club is well known as a "strip club," "gentlemen's club" or an "adult entertainment club."

84.     The Club's customers frequent the Club to watch nude dancing.

85.     The presence of nude dancers was and is integral to the Club's business success and operations.

### Other Relevant Allegations

86.     Plaintiff and the collective action members were and are economically dependent on the compensation they received from working at the FOLLIES.

87.     At all times during the relevant time period, Plaintiff and the collective action members were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

88.     At all times during the relevant time period, Defendants were "employers" of Plaintiffs and the collective action members as defined in the FLSA.

89.     At all times during the relevant time period, Plaintiff and the collective action members were not exempt from the minimum wage requirements of the FLSA.

**Liability and Damages**.

90.     At all times during the relevant time period, Defendants paid no wages to Plaintiff and the collective action members for any work time on the premises.

91.     Plaintiff and the collective action members generally worked at least seven hours per shift at least two (3) days per week at the Follies.

92.     On occasion, Plaintiff and the collective action members worked over forty (40) hours in a workweek.

93.     In addition, Plaintiffs and the collective action members were required to do their hair, nails, toenails, make-up and bathe and dress for each shift to comply with FOLLIES's policies and procedures and to prepare for work.

94.     The time spent by each entertainer complying with FOLLIES's appearance and dress requirements typically exceeded one (1) hour per shift.

95.     At the end of each night shift, each entertainer was required to wait for Follies' customers to exit the Club and parking lot before she was allowed to leave the Follies' premises.

96.     Typically, each entertainer was required to wait 20 minutes to an hour each night shift to comply with the Club's waiting policies.

97.     The Club did not pay any wages to Plaintiffs and the collective action members for the time spent working on the premises, getting ready for work and waiting to leave the premises after work.

98.     Plaintiffs and the collective action members worked entirely for tips paid by the Club's customers.

99.     The tip compensation was paid directly by the customer to Plaintiffs and the collective action members.

100.    Follies keeps no records of the amount its entertainers are paid by customers.

101.    The amounts paid to Follies' entertainers by its customers are not included in Follies gross receipts or accounting records.

102.    The amounts paid to entertainers by customers is not taken into possession by Follies and distributed by Follies to each entertainer.

103.    Plaintiffs and the collective action members were required to pay Follies and others to work at the Club.

104.   Plaintiff and each collective action members were required to pay from their tips a fee to Follies of between $30 - $105 per shift to work at the Club dependent upon the time of arrival and departure.

105.   The house fee increased if Plaintiffs or the collective action members arrived after the start of the scheduled shift or left before the end of the shift.

106.   Plaintiff and the collective action members were required to pay the greater of 10% or $10 from their tips to the Disc Jockey each shift.

107.   The Club requires the DJ to "kick-back" a portion of the fees paid by the entertainers to the DJ back to the Club.

108.   The various fees charged Plaintiff and the collective members violate the free and clear requirement of the FLSA, and constitute an illegal "kick-back" under the FLSA.

109.   The various fees charged by the Club to Plaintiff and the collective action members caused their wages to drop below the minimum wage and the applicable overtime wage during workweeks in which Plaintiff and the collective action members worked overtime.

110.   Follies has repeatedly been sued for the exact same FLSA violations alleged in this lawsuit.

111.   FOLLIES has known for many years that its misclassification and compensation schemes at the FOLLIES violated the FLSA, but has continued to operate unlawfully because it has been more profitable to continue violating the law than complying with the FLSA.

**B.     Waitress Claims.**

112.   Barker worked as a waitress for Defendants approximately one (1) shift per week since January 2018.

113.   Follies' waitresses served food and drink to Follies' customers.

114.   Barker and the other Follies waitresses worked a scheduled day shift from 11:00 am until 8:00 pm or nights shift from 7:30 pm until closing around 4:00 pm.

115.   Follies did not pay a wage to Plaintiff or any other waitress working at Follies.

116.   Plaintiff and Follies other waitresses were compensated entirely by tips from Follies customers.

117.   Plaintiff and the Follies waitresses were required to pay certain fees to Follies and its bartenders, bar-backs, bouncers, security personnel and valets each shift.

118.   The required fees were primarily or entirely for the benefit and convenience of Defendants.

119.   A portion of the required fees and payments were taken by the Club, management and other persons who are not regularly and customarily tipped.

## COLLECTIVE ACTION ALLEGATIONS

120.   Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

121.   The Club maintained a policy and practice of (i) misclassifying its entertainers and waitresses as independent contractors; (ii) requiring them to pay to work as described herein; (iii) taking their tip income; and (iii) not paying them the minimum and overtime wage required by law.

122.   Follies unlawful policies and procedures, as described herein, were applied to all entertainers and waitresses working for FOLLIES during the past three (3) years.

123.   Like the Plaintiff, there are members of the putative collective action who are or were subject to the same FLSA violations and who wish to join this lawsuit. These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent.

Defendants can readily identify these similarly situated entertainers and waitresses through its business records and produce their contact information to Plaintiffs' counsel.

124.    The putative class includes:

All entertainers and waitresses who worked at FOLLIES during the past three (3) years.

## <u>COUNT ONE</u>
## <u>VIOLATION OF 29 U.S.C. §§ 206</u>

125.    Paragraphs 1 through 124 are incorporated herein by this reference.

126.    At all times material hereto, Plaintiff and the collective action members were or are employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA, 29 U.S.C. § 206.

127.    At all times material hereto, Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

128.    Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216(b).

129.    A consent to sue executed by each Plaintiff is attached to this demand.

130.    Plaintiff and the collective action members are entitled to payment of their minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

131.  Defendants' requirement that Plaintiff and each collective action member pay fees and fines to the Club and its managers, house moms, and DJs, and others violated and continue to violate the "free and clear" requirement of 29 CFR 531.35, thereby constituting an unlawful kickback in violation of the FLSA.

132.  As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiff and the collective action members are entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

133.  As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs and the collective action members for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

## COUNT II
## OVERTIME WAGE CLAIM (Violation of 29 U.S.C. § 207)

134.  Plaintiff repeats and realleges the allegations in the preceding paragraphs of this Complaint, and incorporate the same herein by this specific reference.

135.  Each Defendant is an "employer" or joint employer of Plaintiff and each collective action member within the meaning of the FLSA, 29 U.S.C. § 203(d).

136.   Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216(b).

137.   A consent to sue executed by each Plaintiff is attached to this demand.

138.   Defendants failed to pay Plaintiff and all others similarly situated the applicable overtime wage for each hour in excess of forty (40) during each workweek in which they worked in violation of 29 U.S.C. § 207.

139.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff and the collective action members the overtime wage required under the FLSA.

140.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

141.   Due to Defendants' FLSA violations, Plaintiff and the collective action members are entitled to recover from Defendants, overtime wage  compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## COUNT III
## UNLAWFUL TAKING OF TIPS (Violation of 29 U.S.C. § 203)

142.  Plaintiff repeats and realleges the allegations in the preceding paragraphs of this Complaint, and incorporate the same herein by this specific

reference.

143.   Each Defendant is an "employer" or joint employer of Plaintiff and each collective action member within the meaning of the FLSA, 29 U.S.C. § 203(d).

144.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

145.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

146.   Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216(b).

147.   A consent to sue executed by each Plaintiff is attached to this demand.

148.   Under TIPA:

[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

149.   Defendants kept a portion of tips paid to Plaintiffs and the collective action members by Defendants' customers in the form of fees to the Club, management, supervisors and others in violation of TIPA.

150.   As a result of Defendants willful violation of TIPA, Plaintiff and the

collective action members are entitled to recover, under the FLSA and TIPA, all tips kept by the employer, any tip credit claimed by Defendants, an equal amount in liquidated damages and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant relief as follows:

a.    Certify this as a collective action and issue notice to collective action members;

b.    As to Count I award Plaintiffs and the collective action members judgment for wages at the minimum rate, including the recovery of all payments reducing wages below the minimum wage, as well as liquidated damages, interest and attorneys' fees as provided for under the FLSA;

c.    As to Count II award Plaintiffs and each collective action member who joins this lawsuit judgment for overtime wages, including the recovery of all payments reducing wages below the overtime wage,  as well as liquidated damages in an equal amount, interest and attorneys' fees as provided for under the FLSA;

d.    As to Count III award Plaintiffs and each collective action member who joins this lawsuit judgment for the recovery of all tips kept by the employer, the amount of any tip credit claimed by Defendants, an equal amount in liquidated damages and reasonable attorneys; fees under the FLSA and TIPA;

e.    Award Plaintiff costs of this action, including expert fees;

f.    Grant Plaintiffs and the collective action members a jury trial on all issues so triable; and

g.    Award Plaintiff such other and further relief as the Court may deem just and proper.

This 4th day of June, 2018.

DUDLEY LAW, LLC

*/s/Ainsworth G. Dudley*
Ainsworth G. Dudley
Georgia Bar No. 237215

4200 Northside Parkway, 1 – 200
Atlanta, Georgia 30327
Tel. 404.237.2150
adudleylaw@gmail.com

**FLYNN LAW FIRM, LLC**

/s/ Jonah A. Flynn
Jonah A. Flynn
Georgia Bar No. 266555
*Counsel for Plaintiffs*

4200 Northside Parkway NE
Building One, Suite 200
Atlanta, GA 30327
Phone: 404-835-9660
Fax: 404-835-6005
e-mail: jflynn@flynnfirm.com

## **JURY DEMAND**

Pursuant to F.R.C.P 38, Demand is hereby made for trial by jury on all issues raised by these pleadings.

*/s/ Ainsworth G. Dudley*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B. This pleading has been prepared in Times New Roman font, 14 point.

By: */s/ Ainsworth G. Dudley*